**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| **PATRICIA ENRIGHT** | ) | |
| | ) | |
| Plaintiff, | ) | |
| **v.** | ) | Civil Action No:_____ |
| | ) | |
| | ) | |
| **EQUIFAX INFORMATION** | ) | |
| **SERVICES, LLC.** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Patricia Enright, by and through counsel, brings this Complaint against Defendant Equifax Information Services, LLC. ("Defendant" or "Equifax") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1.      Patricia Enright leased a Subaru vehicle for 42 months, paid each payment on time and as the lease term ended, she elected to purchase the vehicle.  To do so, she applied for and obtained an auto loan, tendered the payment, and the lessor acknowledged in writing that it had received the funds.  Not only did JPMC (Chase) acknowledge to her that it had received the bank's purchase money funds, but it also reported the same to Equifax.  The purchase money was paid at the end of July 2020, reported as received in August 2020 and for reasons that remain unexplained, Chase proceeded that same month in August 2020 to report the account as an I9 or charged off bad debt.  The lease term did not end until November 30, 2020, and since Chase had the payoff funds in house, Chase could not possibly claim that the payment was 180 days late, *i.e.* an I9 charge off. In July/August 2020, Chase admittedly had the lump sum payment of $12,392.12, still owned the

vehicle because it had not transferred the title, and the lease had three more months to maturity. How under those facts Chase could possibly claim that the account had gone so bad that Chase would report the account as an I9 charge-off is a true mystery. While an I9 is about the worst account rating possible in the credit reporting world, Equifax decided to make it even worse and report the account as two separate lease accounts that both went into collection as bad debt. All of this occurred during Covid, and ultimately Chase admitted that the $12,392.12 that it had received from the lender was the full amount due, issued a bill of sale reporting the date of payment as December 18, 2020 and finally releasing its lien on the vehicle and then forwarding the title to Ms. Enright in April 2021. While the pay-off issue with the vehicle had been finally resolved, the credit reporting problems were just beginning. Despite the fact that Chase had finally admitted that the payment it had collected and receipted back in July 2020 was the full balance due to purchase the vehicle, it continued to report that it had charged off the account (I9), and Equifax decided to double down on the error and report the lease as two separate charged off lease accounts. Equifax reported the two accounts as having been opened a day apart, but the account numbers were the exact same. Ultimately in the Spring of 2021, Chase started reporting the account as having been paid off making the balance $0, but it did not correct the I9 charge off status. When Ms. Enright discovered the erroneous credit reporting, she started disputing the accuracy of the account with Equifax, but what she did not understand is that Equifax was outsourcing its investigative duties to a third-party in India to save money and increase outsourced reinvestigation volume. That outsourced entity did not empower its dispute processors to correct such errors (including the double reporting of the exact same auto loan account), so they simply issued ACDVs to Chase which proceeded to continue to verify this obviously inaccurate account data. If Equifax had complied with its duties under §1681i and conducted any sort of real investigation with

properly trained and supervised processors that actually reviewed and considered the information in Ms. Enright's dispute letters in connection with its own information, it would have deleted the second/duplicate account and removed the derogatory I9 status since it knew from its own documents and records that the payoff had been tendered in full BEFORE Chase started reporting the account as an I9 charge-off.  Given the outsourced and rote reinvestigation process Equifax implemented, no matter how much information, explanation, and documentation Ms. Enright provided to Equifax, it never even considered or reviewed the documents and allowed these outsourced, third-party processors to send out two different ACDVs to Chase and then program the results to be auto processed once the results were returned.  As a result, Equifax failed to correct its account data and continued to report both accounts inaccurately as having been charged off as uncollectible bad debts right after the account had been paid off in full.  Equifax's failure to conduct a reasonable investigation, failure to review and consider the Plaintiff's documents and disputes, failure to examine its own records and information that confirmed the payoff in August 2020 and failure to correct the double reporting of the exact same car loan was reckless and foreseeable due to its decision to outsource these critical investigations and not closely monitor the actions of the Teleperformance processors.  Prior cases have revealed that Equifax fails to train, supervise, and monitor these outsourced processors and simply allows Teleperformance to process as many disputes as possible and economically as possible.  Accordingly, Ms. Enright requests an award of actual damages, statutory damages, punitive damages, attorney's fees, and costs based upon Equifax's violation of the Fair Credit Reporting Act 15 U.S.C. §1681 *et seq*.

**Parties**

2.      Plaintiff Patricia Enright is a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because she is an individual.  Unless otherwise specifically stated herein, the term "Plaintiff" shall refer to Patricia Enright.

3.      Defendant Equifax Information Services LLC, (hereinafter "Equifax"), is a consumer reporting agency, as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties.  Equifax regularly conducts these business activities in the Eastern District of Virginia by providing credit reports and other products to consumers and businesses in the Alexandria division of the Eastern District of Virginia.

**Jurisdiction & Venue**

4.      This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681(p).  Venue is proper in this jurisdiction in that Equifax resides in this judicial district by virtue of its extensive transaction of business in the EDVA and is subject to personal jurisdiction herein.  Equifax also maintains the office of a registered agent in the Eastern District of Virginia.

**Factual Allegations**

5.   Ms. Enright leased a vehicle through Subaru Motors Finance.  Subaru Motors Finance is affiliated with JP Morgan Auto ("Chase"), who is the furnisher of the credit information related to the inaccurate credit reporting at issue in this action.

6.   The 42-month lease term began in May 2017 with the final payment due in the end of November 2020.

7.   Ms. Enright made all of her lease payments on time.

8. Equifax knows Ms. Enright made all of her lease payments on time based upon the data that it maintains related to her account.

9. Ms. Enright wanted to purchase her Subaru at the close of the lease term and started the process early. Rather than wait until November when the lease was ending, she decided to get a payoff in July 2020.

10. Subaru Motors Finance provided her with an exact number of $12,392.12. Ms. Enright obtained an auto loan for that amount and tendered the check to Chase.

11. By letter dated August 11, 2020, Chase admitted receiving the check on July 31, 2020.

12. Chase also told her in that August 11, 2020 letter that the payoff was short and that she needed to tender an additional $851.20 to pay off the vehicle.

13. Ms. Enright wanted to know why the number had changed from what they told her, but when she called Chase, it was during Covid, and she could not get a straight answer or explanation from them.

14. Based upon the original terms of the lease, the original account balance was $9,681 and her approximate remaining lease balance or payments due at the time of the car purchase in July 2020 was a little over $900.

15. Chase bungled the posting of the payment and the conclusion of the lease. Rather than post the funds to the remaining $900 lease balance and show that the lease had been paid ahead through the end of the lease term in November, it erroneously reported the account as a charge off (I9) which means that the account is 180 days past due and the lender has declared it uncollectable. After Chase had received and acknowledged receiving the $12,392.12 payment, it reported to Equifax that the account was a charge off, that the current balance was $12,364 and the past due balance was $12,364. Chase further reported to Equifax that the date of first delinquency (*i.e* the

first date that it became 30 days late without being brought current) was August 1, 2020. Chase further reported that it wrote off $12,364.

16. Equifax, however, could see from its own records and data on this account that Chase also reported the large lump sum payment as part of the trended payment data. Equifax could see the inconsistencies and absurdities of the situation based upon the data that it maintained.

17. Ms. Enright had paid the amount that Chase told her to pay and kept pressing for the release of the title. In November 2020 right before the end date of the lease, Chase sent her a letter that had the heading: "Itemization of Payoff for Lease Vehicle Purchase." The new balance was disclosed as $13,207.95. Despite the fact that it had admitted and acknowledged (in writing) receipt and posting of her payment of $12,392.12, it showed no credit for that payment that it received on July 31, 2020.

18. Ms. Enright continued to fight for the release of her title and the resolution of this payment issue. Finally, on April 28, 2021, Chase sent her a VEHICLE BILL OF SALE in which it acknowledged that the payoff amount was the exact amount it had originally quoted her and admitted receiving from her: $12,392.12. It also recorded in that Bill of Sale that the date of the sale was December 18, 2020.

19. Because that was the exact amount that she had paid back in July 2020, Chase released its lien on the vehicle, assigned the title to her and sent the actual title to her so that she could register the vehicle with the DMV and record the new lien in favor of the new lender that financed the lease buy-out. Thus, as of December 18, 2020, Chase acknowledged in writing again that this problem had been resolved and Chase admitted that it had been paid in full for the vehicle in the exact same amount that it received back in July 2020. The title work always demonstrated that

Ms. Enright paid the full amount for the lease and subsequent transfer of the title when she tendered the payment in July 2020.

20. Equifax's data always contained information related to the $12,392.10 payment posted and reported as part of the account history.

21. Despite the fact that Ms. Enright had finally convinced Chase that she had paid the correct amount back in July, her problems were far from over.  Now she had to grapple with the obviously erroneous credit reporting on the account.

22. In June of 2022, Ms. Enright telephoned the three major credit reporting agencies to dispute the manner that Chase reported the account on her credit file.  Chase reported a charged-off debt in the amount $12,364 as of August 2020.  This was inaccurate and misleading credit reporting regarding the transaction because Chase knew that it had possession of the full pay-off amount the day before the alleged charge-off happened.

23. Even if Chase was quibbling about the amount of the pay-off, it had received ample funds to make the final three lease payments in advance, the prior lease payments had been made timely, and there was nothing past due in August 2020.  Even more glaring was the assertion that the account had lapsed into 180 days past due such that Chase had decided to charge it off as an uncollectible bad debt that was reporting as an I9.

24. On its face, Equifax could see that the account could not accurately be reported as a charge off in July or August 2020 since Chase was also reporting the date of first delinquency as August 31, 2020.

25. On or about June 17, 2022, Patricia A. Enright contacted Equifax to dispute the manner that the Chase account appeared on her Equifax credit file.  Ms. Enright told Equifax that she

disputed the credit reporting for the account because the account had been paid in full and that the information reported by Equifax was inaccurate and/or misleading.

26. On June 17, 2022, Equifax issued an Automated Consumer Dispute Verification form (ACDV) to Chase.

27. The June 17, 2022 Equifax ACDV specifically noted in the FCRA Relevant Information section that "CONSUMER STATES THAT THIS ACCOUNT JPMCB AUTO FINANCE SHOULD NOT REPORTING ON HER FILE THE CAR HAS BEEN PAID OFF FROM FIRST NATIONAL BANK NO BALANCE AND THE STATUS SHOULD BE PAYS AS AGREED." Prior to issuing this ACDV, Equifax could have looked at its internal data and seen the large payment made in July 2020 that greatly exceeded both the remaining amounts due under the lease and the total lease payments that would have ever been due on the lease.

28. Based upon information and belief, Equifax failed to conduct any independent reinvestigation and simply allowed its outsourced third-party processor (Teleperformance) to issue an ACDV to Chase after Ms. Enright telephoned Equifax to dispute the Chase account.

29. As part of Chase's ACDV response on June 23, 2022, Chase told Equifax in the trended monthly payment data that the date of last payment was July 1, 2020, with a balance of $982, Scheduled payment amount of $253, and actual payment amount of $12,392. This response confirmed that Ms. Enright had paid the lease and account in full in July 2020 and that Equifax's credit reporting was inaccurate and misleading.

30. On June 25, 2022, Equifax stated that the results of the reinvestigation were complete, and that Equifax verified that the item is reporting correctly. While Equifax stated that the account had been paid in full, the key derogatory information that the Chase account was a charged-off account (I9) remained. The historical account information stated that there was no

data available from May 2022 back to February 2021, that the past due balance was $12,364 in January 2021 but that a payment amount of $12,392 occurred in September 2020. This historical balance information placed Equifax directly on notice that Equifax received faulty data on the ACDV response. Its outsourced and automated ACDV process failed to have a proper review and consideration of the information in its data which resulted in a negligent and reckless reinvestigation of the dispute.

31.     Equifax reported inaccurate and misleading information without conducting a reasonable reinvestigation of Ms. Enright's dispute. At a bare minimum, it should have corrected the double reporting of this auto lease, particularly since they both had the exact same account number.

32.     Ms. Enright was in the process of selling a home in June 2022, and she wanted to have an accurate credit file in June 2022 so that she could have the highest possible credit score to obtain the best possible rate when she went to purchase another home. The Chase account reported as a derogatory account in her credit history because it reported as charge-off prior to the account being paid off. Based upon information and belief, this suppressed her credit score when she went to apply for mortgages during that time period.

33.     Ms. Enright next contacted an attorney to try and assist her with the inaccurate credit reporting. The attorney issued a credit dispute package to Equifax dated July 11, 2022 that Equifax received on July 22, 2022.

34.     The credit dispute package included a detailed letter that explained the circumstances of the account payoff and lease conclusion; an August 11, 2020 letter from Subaru Motors Finance that acknowledged receipt of the $12,392.12 payment on July 31, 2020; and a copy of the certificate of title transfer for the vehicle to Ms. Enright. The credit dispute letter

clearly informed Equifax of the key facts that "All lease payments were timely made until the lease purchase option was exercised. This loan was paid off, the released title was used to secure the purchase loan and then that loan was paid off and the vehicle was sold."

35.     Equifax could tell from the payment data that it maintained related to the account that the facts from the dispute letter were corroborated with the payment data in the Equifax records. Equifax could see all the lease payments being made and then the large lump sum payment made. It could also see that the date of first delinquency in August 2020 was inconsistent with a charge-off that same month and year. Only a negligent and/or reckless consumer dispute reinvestigation would ignore the payment data that Equifax maintained in its records.

36.     Unfortunately, Equifax has implemented a consumer dispute reinvestigation process that focuses on low costs and speed over a meaningful reinvestigation and analysis of the dispute and the data maintained by Equifax.

37.     On July 24, 2022, Equifax issued an ACDV to Chase which had an electronic code dispute code of [007] stating that the account status, payment rating, and account history were disputed. In addition, Equifax attached a copy of the consumer dispute package to the ACDV. By attaching the consumer dispute letter, Equifax acknowledged that the credit dispute package contained additional relevant information, but as part of its reinvestigation, Equifax does not appear to have considered the information contained in the credit dispute letter.

38.     According to Webster's dictionary, "consideration" means "1. Continuous and careful thought; 2. A matter weighed or taken into account when formulating an opinion or plan. 3. Thoughtful and sympathetic regard. And 4. An opinion obtained by reflection."

39.     Equifax never considered the information in the July 11, 2022 credit dispute package because its consumer dispute reinvestigation system is not designed for thoughtfulness or

reflection. Equifax's goal is to process consumer disputes like a thoughtless machine, attach the dispute package to the furnisher, and then simply leave the decision up to the furnisher. This is the recklessness of Equifax's consumer dispute reinvestigation procedure.

40.     The Fair Credit Reporting Act as remedial legislation is designed to protect consumers and requires Equifax to consider the information provided by a consumer. The statute specifically states, "the **consumer reporting agency** shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." *See* 15 U.S.C. §1681i(a)(4)(emphasis added).

41.     Equifax does not consider the information provided by the consumer despite acknowledging that the information is so relevant that it should be attached to an ACDV and sent to the furnisher of the information. Equifax has no records of how long an ACDV processor examined the dispute and its internal records only reflect that an ACDV was issued with an attachment.

42.     Equifax cannot specifically identify any facts that it considered as part of reinvestigation of the July 11, 2022 dispute. Equifax only knows that a processor issued an ACDV for Ms. Enright to Chase and attached an image. This is not a consideration of the dispute as required by the language of the statute or any reasonable meaning of the word "consider." Had any dispute processor working on behalf of Equifax actually reviewed and considered the facts available to him/her about this account/trade line, they would have seen the obvious inaccuracies and inconsistencies that would render the credit reporting unverifiable

43.     To make matters worse, Equifax routinely misrepresents that information in disputes does not match information in Equifax consumer's credit file after receiving a consumer credit dispute package. As to the July 11, 2022 credit dispute package, Equifax issued a letter to

Ms. Enright's attorney dated July 25, 2022 that stated, "Because the information that you provided as proof of your identity does not match the information that we currently have on your credit file, we ask that you send us a copy of two different items-one from each of the two categories listed below.   One item will verify your identity and the other will verify your current address." Equifax's letter of July 25, 2022 is a blatant lie because Equifax had already located Ms. Enright's credit file, knew the account information in the dispute package matched Mrs. Enright's consumer credit information, and issued an ACDV to Chase dated July 24, 2022.

44.     As of June 25, 2022, Equifax reported the inaccurate and derogatory JP Morgan Chase automobile lease as two sperate entries on Ms. Enright's credit file.   Discovery is necessary as to how this occurred, but Equifax could see the two different tradelines, and Equifax issued two ACDVs in June 2022 to JP Morgan Chase.   When Equifax issued the results of the reinvestigation, it also issued two distinct results of the reinvestigation.   Equifax never considered the fact that its internal data reported the same JP Morgan account twice on the Equifax credit file.

45.     On July 31, 2022, Equifax issued the results of the reinvestigation.   Equifax verified the same inaccurate account information twice when it issued the results.   Equifax first reported the account with a date opened of June 1, 2017 that had the status of a charged-off and an account history code of "L" for 12/2020.   Equifax stated for this version of the account that the creditor verified to Equifax that it was reporting the account information correctly.   Equifax also reported the JP Morgan account as opened May 30, 2017 with a status as Charge-off and historical account balance information as no data from June 2022 back to February 2021.   The Historical account balance information shows a balance of $12,364 for January 2021 which ignored the historical balance of $982 and actual payment amount of $12,392 for September 2020.   By July 2022, Equifax not only failed to review and consider the information in the dispute, but it disregarded

the payment information in its data, and it doubled reported the same derogatory account twice on Ms. Enright's Equifax credit file.

46.     The double reporting of the inaccurate and misleading derogatory JP Morgan account would be particularly problematic for Ms. Enright because Equifax would report the account twice on credit reports sent to Factual Data, Inc. when Ms. Enright was trying to get a mortgage.  This demonstrates Equifax's recklessness and lack of institutional controls for credit data.

47.     In late September 2022, Ms. Enright sent another credit dispute package to Equifax. She provided a letter that described what happened related to the transaction and included the relevant information that this was a 42-month automobile lease that started on May 30, 2017.  This was crucial information as to Equifax's double credit reporting of the account as Equifax reported the account as opened on both May 30, 2017, and June 1, 2017.  This information along with a copy of the lease provided in the credit dispute package that showed the lease date as May 30, 2017, should have immediately caused Equifax to stop reporting the account twice.

48.     The credit dispute letter also included information about the payment history; how Ms. Enright tendered all the lease payments and the purchase price for the car.  The dispute package also included a copy of the August 11, 2020 letter that acknowledged receipt of the payoff on July 31, 2020 and a copy of the authorization for payoff related to the account.

49.     Equifax received the credit dispute package on September 27, 2022, and it issued two ACDVs to Chase on September 30, 2022, with a copy of the credit dispute package attached to the ACDVs.  One of the ACDVs had an ACDV control number with the last four digits of 2013 and the other an ACDV control number with the last four digits 2014.  The consecutive nature of the ACDV control numbers for the exact same account number necessarily means that the ACDV

13

indicator did nothing about the exact same account appearing on Ms. Enright's credit file twice other than issue two different ACDVs. The reasonable inference from this situation is that ACDV indicators have no authority to do anything other than issue ACDVs to furnishers and lack the ability to consider the information in the credit dispute letter in conjunction with what is on the Equifax credit file.

50.     As with the previous dispute, Equifax felt that the credit dispute letter and supporting documentation were relevant enough to attach to an ACDV, but the record will be devoid of any evidence that Equifax itself considered the information in the letter and the documents included with the letter. Equifax has established a routine for consumer credit disputes that involves the outsourcing of the consumer credit dispute process to a third party located in India. Equifax fails to maintain proper controls over this third-party entity, and Equifax shares certain information with the India based entity, just enough information so that a consumer credit file can be located and an ACDV issued.

51.     Equifax Information Services, LLC fails to consider the relevant facts from a consumer's credit dispute letter related to a consumer credit dispute.

52.     Equifax Information Services, LLC's internal documents contain no recorded facts or records of what, if any, information that the outsourced representatives in India considered from the credit dispute packaged attached to the ACDV.

53.     Equifax Information Services, LLC's business records simply show that an ACDV was issued and a certain file was attached. Accordingly, Equifax Information Services, LLC not only does not consider the consumer dispute information as part of the reinvestigation required by the statute, but it has no idea what its third-party unaffiliated agent considers. This is a reckless reinvestigation and in violation of the plain language of the statute.

54.     On October 4, 2022, Chase responded to the Equifax ACDV with the last four digit control number 2013. This ACDV response told Equifax that the account was a paid charge-off with the last payment date of April 2, 2021. As with other ACDV responses, Chase also reported in the historical balance section of the ACDV that an actual payment of $12,392 was made as of July 1, 2020, when the account balance was a mere $982. Equifax never considered this data despite the fact that it corroborated the information that Mrs. Enright provided in the credit dispute letter and the supporting documents provided with the credit dispute letter.

55.     On October 10, 2022, Chase responded to the second Equifax ACDV with the last four-digit control number 2014. This ACDV response told Equifax that the account was a paid charge-off with the last payment date of April 2, 2021. This ACDV response lacked any historical data reported about the account in response. Accordingly, Equifax not only ignored that it reported the account twice, sent two ACDVs about the same account, received two different responses, and that one of the responses lacked sufficient data to verify the reporting of the account in light of the additional information that Ms. Enright provided with the credit dispute package.

56.     Equifax ignored red flags in the historical account payment data that should have caused concern and follow-up reinvestigation of any reasonable person reinvestigating this dispute. However, Equifax's outsourced disputes to unrelated third parties that offered little more than ACDV issuance resulted in no one from Equifax considering any aspect of the information that Ms. Enright disputed. Rather than instruct someone reliable to reinvestigate and examine what Ms. Enright said in her dispute letter and what her attached documents demonstrated, it decided to outsource the work to low-paid subcontractors that did the bare minimum. This was no accident, but rather the foreseeable result of a system that is designed to put profits over people.

57.     In January 2023, Ms. Enright tried to get Equifax to reinvestigate the disputed JP Morgan Chase account by sending another credit dispute package.  In this letter, she explained the payment history and that this was a forty-two-month lease that started on May 30, 2017.  She made all the lease payments on time and agreed to purchase the car as allowed under the terms of the lease.  She explained that she received a Bill of Sale and the title to car with the same sale price that she had tendered in July 2020.  She included documents as support for the dispute including the letter acknowledging receipt of the pay-off, the pay-off letter that refused to acknowledge her prior payment, and a copy of the car title with the car titling paperwork.

58.     On February 1, 2023, Equifax sent a letter to Ms. Enright that misrepresented that Equifax could not locate a credit file in their data base with the information that she provided:

> **Dear PATRICIA ANN ENRIGHT:**
>
> We have received your request concerning inaccurate information on your Equifax credit file.
>
> We were unable to locate a credit file in our database with the identification information you provided, In order to further assist you, we will need additional documents to verify your identification. Please provide your complete Name, Current and Former Addresses, Social Security Number and Date of Birth. We ask that you **please send us a copy of two different items - one from each of the two categories listed below.** One item will verify your identity and the other will verify your current address.

Plaintiff attaches a copy of the full letter as Exhibit "A."

59.     The letter Equifax sent as Exhibit "A" misrepresented that Equifax could not locate Ms. Enright's credit file when in fact Equifax not only located her credit file, but it issued two separate ACDVs to Chase that same day.

60.     On February 1, 2023, Equifax issued an ACDV to Chase that once again attached as an image a copy of the credit dispute package with the supporting documents.  The last four digits of the ACDV control number was 0013.  Equifax also issued a second ACDV to Chase that same day with the last four digits 0014.  Equifax likely issued two different ACDVs to Chase

regarding the same account the same day because Equifax had long reported the same account twice as apart of Ms. Enright's Equifax credit file.

61.    On February 2, 2023, Chase responded to the ACDV with the last four control numbers 0013.  Chase continued to report the account was a paid charge-off with an original charge-off amount of $12,364 and date of last payment of April 1, 2021, and a Date of First Delinquency of August 1, 2020.

62.    On February 7, 2023, Chase responded to the ACDV with the last four control numbers 0014.  As with the previous responses, Chase continued to report that the account was a paid charge-off with a date of last payment of April 1, 2021 and an original charge-off amount of $12,364.

63.    Ms. Enright does not believe that she ever received the statutorily required results of the reinvestigation.  When Equifax was subpoenaed in a different case, Equifax never produced any results of the reinvestigation as part of the subpoena response.  Plaintiff contends that Equifax never issued a response of the reinvestigation based upon its deceitful statement that it could not locate the Plaintiff's credit file.  Equifax likely just falsely states that it did not locate the credit file to eliminate a consumer's ability to know the results of the reinvestigation of the dispute and save money by not issuing results.  This is reckless and intentionally deceitful behavior.

64.    Ms. Enright sought a mortgage, and she was denied on multiple occasions.  As a result, she suffered actual damages, emotional distress, loss of access to credit, inconvenience, and loss of time dealing with the problems that Equifax refused to correct.

**COUNT I**
**Fair Credit Reporting Act**
**15 U.S.C. §1681i**

65.    Plaintiff incorporates paragraphs one (1) to sixty-four (64) as if fully stated herein.

66.     Defendant Equifax has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA.  Equifax is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681i by failing to comply with the enumerated statutory provisions when Ms. Enright disputed the Chase account as part of her disputes.

67.     Equifax violated 15 U.S.C. §1681i(a)(1) by its conduct related to Ms. Enright's credit disputes as identified in the factual statements.  Equifax failed to review and consider the information included in the letter and conduct a reasonable reinvestigation of the disputes after consulting its own records and data concerning the trade line.  Equifax simply issued ACDVs with no regard for the circumstances related to Ms. Enright's purchase of the vehicle as permitted by the lease.  Equifax would never contact Chase outside an electronic ACDV to inquire as to the total circumstances and never considered Mrs. Enright's documents, dispute letter, and the historical record information available in Equifax's internal data that proved the dispute letter truthful, which resulted in misleading and inaccurate credit reporting.

68.     The FCRA requires that in conducting its reinvestigation under 15 U.S.C. §1681i(a)(1)(A) that a credit reporting agency must delete information about a consumer unless it is able to verify said information as stated in 15 U.S.C. §1681i(a)(5)(A):

> In general If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or **cannot be verified**, the consumer reporting agency shall- (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer. 15 U.S.C. §1681i(a)(5)(A) (emphasis added)

69.     According to Black's Law Dictionary, the ordinary meaning of verify is, "to prove to be true; to confirm or establish the truth or truthfulness; to authenticate."  Based upon the

information provided in the dispute letter, Equifax could not have met the high bar of verification necessary to allow the Chase Auto account to remain on Ms. Enright's credit report after the credit disputes because of the additional information and factual detail she provided about purchasing the vehicle after having tendered all previous lease payments on time.  Equifax also knew that Chase admitted to receiving the pay-off figure in July 2020, yet Chase continued to report the date of first delinquency as August 2020.

70.     Equifax also violated 15 U.S.C. §1681i(a)(4) after receiving Mrs. Enright's disputes in June 2022, July 2022, September 2022, and January 2023 as described in the factual averments because it failed to review and consider all relevant information that Mrs. Enright provided about the lease and simply relied on the ACDV process.

71.     Equifax also violated 15 U.S.C. §1681i(a)(6) when it failed to provide the notice of the results of the reinvestigation after the January 2023 dispute.  Equifax not only failed to send Mrs. Enright the results of the reinvestigation, but it misrepresented that it could not locate her Equifax credit file, even though it located her Equifax credit file that same day and issued two ACDVs to Chase.

72.     Punitive damages are warranted for Equifax's actions based on the totality of the circumstances.  Equifax should have done more than rely on the ACDV exchange and in fact if it had done more could have discovered how its own internal data regarding the payment amounts and dates complete corroborated Ms. Enright's disputes and the supporting documentation that she sent over to Equifax as part of the dispute.   Instead of Equifax conducting the required reinvestigation as required by statute, Equifax simply sent electronic copies of the dispute letter/package to a third party located in India.  Equifax provided this third-party access to information in the Equifax database in order to issue ACDVs, but the end result of this systemic

process was that neither Equifax nor the outsourced third party considered the information in the dispute as part of a reasonable reinvestigation.

73.     Mrs. Enright suffered actual damages including time spent addressing the problem, improper denial of access to credit, inability to obtain a mortgage, inconvenience, and emotional distress damages.  In addition, punitive damages are necessary based upon Equifax's reckless disregard for reviewing information submitted by consumers and issuing ACDVs.

## COUNT II
### Fair Credit Reporting Act
### 15 U.S.C. §1681e(b)

74.     Plaintiff incorporates paragraphs one (1) to seventy-three (73) as if fully stated herein.

75.     Defendant Equifax has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA.  Equifax is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the plaintiff's credit report.

76.     Equifax willfully and/or negligently violated the Fair Credit Reporting Act at 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information reported about Mrs. Enright.

77.     Equifax's publishing of inaccurate information was a substantial factor in the denial of credit to Ms. Enright when she applied for a home mortgage.  Equifax provided inaccurate information to Factual Data on September 23, 2022 and November 18, 2022 as well as to Credco on September 6, 2022.  Equifax also reported the disputed account twice on Ms. Enright's credit file so that the report reflected not one but two different paid charge-off accounts.

78.     Ms. Enright suffered substantial damages including: the denial of credit, loss of time working to restore her credit; inability to obtain a loan to purchase a home, inconvenience, and emotional distress caused by Equifax's violations of the FCRA.

79.     Punitive damages are necessary because Equifax has implemented a system and process that it knows results with inaccurate credit reports being sold to furnishers because Equifax fails to invest the resources into enacting procedures to protect consumers. Equifax has implemented procedures to allow inaccurate data to remain in its system that cannot be verified if reinvestigated properly.  Only punitive damages can curb this type of conduct that operates in reckless disregard for accurate credit reports.

<u>**Prayer for Relief**</u>

Wherefore, the Plaintiff prays that the Court award the following relief:

a)      Actual damages based upon Defendant's violations of the FCRA;

b)      statutory damages against Defendant's based upon violations of the FCRA;

c)      punitive damages based upon the violations of the FCRA

d)      costs and reasonable attorneys' fees incurred by the Plaintiff;

e)      prejudgment interest

f)      all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury as to all issues against all defendants.

Respectfully submitted
Patricia Enright

By: Counsel

A. Hugo Blankingship, III, VSB 26424
Thomas B. Christiano, VSB 43940
Blankingship & Christiano, P.C.
11862 Sunrise Valley Dr. Suite 201
Reston, Virginia 20191
(571) 313-0412
Fax:(571) 313-0582

PATRICIA ANN ENRIGHT


February 1, 2023

Dear PATRICIA ANN ENRIGHT:

We have received your request concerning inaccurate information on your Equifax credit file.

We were unable to locate a credit file in our database with the identification information you provided, In order to further assist you, we will need additional documents to verify your identification. Please provide your complete Name, Current and Former Addresses, Social Security Number and Date of Birth. We ask that you **please send us a copy of two different items - one from each of the two categories listed below.** One item will verify your identity and the other will verify your current address.

**Category 1) IDENTIFICATION**
Please make a copy of **one of the following items.**
The item you choose **MUST** contain your complete 9-digit Social Security number.
- Pay stub with complete U.S. Social Security number
- W-2 form with complete U.S. Social Security number
- Valid Social Security Card

**Note:** A 'Work Permit Only' card is not valid proof of a SSN.

**Category 2) CURRENT ADDRESS**
Please make a copy of **one of the following items.**
The item you choose **MUST** contain your current mailing address of   2225 COUNTRY CLUB DR, Pittsburgh,  PA 15241-2333.
- Driver's license
- Rental/lease agreement or house deed
- Pay stub with address
- Utility bill (i.e. gas, electric, water, cable, residential telephone bill) with current service address.

**Again, we need a total of two items -- one item from each of the categories above -- to process your request. Please submit those items along with this letter to the following address:**

**Equifax Information Services LLC**
**P.O. Box 105069**
**Atlanta, GA 30348-5069**

To ensure that your request is processed without delay, please enlarge photocopies and ensure the information is legible.  Illegible documents or documents that contain highlights may cause delay in processing as we may have to ask you to resubmit your request with more legible documents.

Please return this letter along with the requested information and your original correspondence/request to the address below.

Equifax Information Services LLC
P.O. Box 740256

000004694-FLT



EXHIBIT
**A**

10400000b46-02012023